IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **PERFIT VISION, EYEWEAR EXPRESS INC. DBA PERFIT VISION & JOHN LUONG,** Plaintiffs | § § § § |
| v | §   Civil Action 4:15-cv-00408 |
| **MOUNT VERNON FIRE INSURANCE COMPANY,** Defendant | § § § § |

### PLAINTIFFS' FIRST AMENDED ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

**PERFIT VISION, EYEWEAR EXPRESS INC. DBA PERFIT VISION & JOHN LUONG**, plaintiffs, file their first amended original complaint, complaining of defendant **MOUNT VERNON FIRE INSURANCE COMPANY**, and respectfully show the Court the following:

### JURISDICTION AND VENUE

1. This Court has original jurisdiction under 28 U.S.C. 1332(a)(2) in that this is a civil action among citizens or subjects of different states and the matter in controversy exceeds seventy-five thousand dollars, exclusive of costs and interest.

2. Venue is proper in the United States District Court for the Southern District of Texas under 28 U.S.C. 1391 (a) & (b) in that the defendant does business in this District and a substantial part of the acts or omissions which gave rise to this lawsuit occurred within this District.

3. **PARTIES:** Plaintiff **EYEWEAR EXPRESS INC. DBA PERFIT VISION ("Eyewear")** is a Texas corporation with its principal office located in Fort Bend County, Texas, and does business as "Perfit Vision" and is commonly known as "Perfit Vision".

4. Plaintiff **JOHN LUONG ("Luong")** is an individual residing in Fort Bend County Texas and is one of the owners of "Perfit Vision".

4.1 **Perfit Vision** is the common name of the business insured in this lawsuit and this suit is brought under the business' common name under Texas Rule of Civil Procedure 28.

5. Defendant **MOUNT VERNON FIRE INSURANCE COMPANY** is a Pennsylvania insurance company eligible to serve as a surplus lines insurer in the state of Texas, has appeared in this suit and will be served via its counsel.

6. **FACTS:** Eyewear does business as Perfit Vision, is commonly known as Perfit Vision and is located at 4555 Highway 6, Suite A, Sugar Land, Texas 77478. Eyewear is owned by several persons, including Luong and his brother in law, Dr. Chris Tran. Perfit Vision is an eyewear store which sells glasses and frames and has expensive equipment used for cutting lenses to fit frames. Prior to Eyewear becoming the owner of the store on or about March 7, 2013, the same premises had been operated as a Pearle Vision franchisee by Luong and his wife, Lisa Tran, sister of Dr. Tran. Dr. Tran, an ophthalmologist, provides eye examinations at the same location as he did when it was a Pearle Vision store. The premises were built out new in 2006 and have been always been an eyewear store, either as Pearle Vision or Perfit Vision.

6.1 Luong was authorized by Eyewear to obtain insurance for Perfit Vision. In an application for insurance from the defendant, dated on or about February 21, 2014, and filled out by an insurance agent Luong had dealt with in the past as the Pearle Vision store, Luong failed to notice that the insured was erroneously listed on the application as "Chris Tran and John Luong DBA Perfit Vision". The defendant subsequently issued a business owners policy of insurance effective February 21, 2014 to February 21, 2015, with the named insured on the policy stated as

"Chris Tran and John Luong DBA Perfit Vision".

6.2     An owner of a business has an insurable interest and Luong sought to cover the business known as "Perfit Vision". The policy issued by the defendant, number BP 2561349, correctly lists the Perfit Vision business address and properly classified the location as a "medical office". Hereafter, the plaintiffs are collectively denominated as Perfit Vision unless stated otherwise.

6.3     The policy covered two Perfit Vision locations including the Sugar Land store and another located in The Woodlands, Texas. The Sugar Land store was identified as "premises 1, building 1" in the policy. The policy provided for business owners property coverage, including business income and extra expense up to $105,000 limits and business personal property up to $300,000 limits at the Sugar Land store.

6.4     On the morning of March 10, 2014, a Monday, Perfit Vision discovered the Sugar Land premises had been burglarized sometime between Saturday, March 8, 2014, 5:11 p.m., when the store closed for business and the time of the discovery. The loss was promptly reported to the defendant on March 10, 2014. The defendant delegated Prodigy Assurance Adjusters to inspect the damage and investigate the facts of the loss.

6.5     An adjuster for Prodigy went to the store, inspected the damage and interviewed Luong, who completely cooperated. The policy includes a "Protective Devices or Services Provisions" endorsement, BP-115, which requires "P-7", functioning and operational central station burglar alarms with a monitoring contract as a condition for coverage of loss due to theft. The store was in fact in possession of a functioning and operational central station burglar alarm with a monitoring contract via Alarmtek and NMC dating back to the days the store was a Pearle

Vision franchise. The burglar alarm equipment had been installed new when the store was built out in 2006.

6.6     After the loss, Luong assisted with the investigation and acquired from Alarmtek an "event history" report for the month of March 2014 based upon the alarm monitoring service Perfit Vision had in effect. The event history report was given to defendant via Prodigy. The report contains records of when the store was "open", meaning the alarm system was turned off, and when the store was "closed", meaning the alarm had been activated. The record clearly shows that on March 8, 2014, the store was "opened" at 8:43 a.m. and "closed" at 5:11 p.m.

6.7     The store hours are posted and were made known to the defendant via Prodigy. The store hours are 10:00 a.m. to 6:00 p.m., Monday through Friday, 10 a.m. to 5:00 p.m. Saturday. The store is closed on Sundays.  The event report establishes that on Saturday, March 8, 2014, the store was equipped with a functioning and operational central station burglar alarm with a monitoring contract when the store was locked up and closed for business at 5:11 p.m. The police incident report, also provided to defendant via Prodigy, shows the burglary was reported to the Sugar Land Police Department at 9:52 a.m. Monday March 10, 2014 and that it was discovered at 9:30 a.m. Prodigy was advised that the store was not open for business at any time after closing Saturday evening and before the discovery of the burglary on Monday morning.

6.8     As a result of the burglary, the following items of equipment were stolen: an auto-refractor (used to measure a person's refractive error and for lenses/contact prescriptions); a tonometer (used to measure pressure in the eyeball to test for glaucoma); an edger (used to cut prescription lenses down to frame size); a Combimax tracer (used to trace frames for lenses

fitting); and, the video hard drive to the security camera, which should have shown the image of any burglar.  Additionally, a Zeiss visual field analyzer machine, used to test for glaucoma, was damaged.  Also, numerous frames were stolen. Perfit Vision staff promptly reviewed its business records to determine which frames had been stolen and highlighted supplier invoices to show what was stolen. All of these losses were documented to the defendant via Prodigy. Whatever was asked of Perfit Vision was provided to defendant via Prodigy.

6.9    In spite of the fact that the loss was covered by the policy and the extent of the loss was documented by Perfit Vision, on August 6, 2014, defendant denied the claim in its entirety on the sole basis that according to the alarm company the alarm "was not set on the captioned date of loss". The defendant invoked the "Protective Devices or Services Provisions" endorsement.

6.10   The defendant's denial letter cites symbol P-7 (functioning and operational central station burglar alarms with a monitoring contract) and quotes the policy:

> "we will not pay for loss or damage caused by or resulting from vandalism, burglary, theft or any other act of stealing if, prior to the vandalism, burglary, theft or any other act of stealing, you:
> (1) Knew of any suspension or impairment in any protective safeguard listed in the Schedule above and failed to notify us of that fact; or
> (2) Failed to maintain any protective safeguard listed in the Schedule above, and over which you had control, in complete working order."

6.11   The alarm in question was not suspended or impaired and thus Perfit Vision had no reason to notify defendant of that. The alarm in question was in complete working order when Perfit Vision closed for business and activated at 5:11 p.m. on Saturday March 8, 2014 and, upon discovering the burglary on March 10, 2014, the alarm did not require a repair. It was still in good working order. The defendant's denial of Perfit Vision's claims is unfounded based upon

the contract language of the policy.

6.12    As a result of the defendant's long delays in handling and subsequent denial of the claim, Perfit Vision not only lost the value of the stolen goods and the cost to repair damage to the equipment and the leasehold (broken glass), the plaintiff has also experienced reduced income due to the uncompensated losses for which plaintiff sues.

6.13    On January 29, 2015, the defendant was given 60 days' notice that the plaintiffs were making claims against it under the Texas Deceptive Trade Practices Act and Chapter 541 Texas Insurance Code.  More than 60 days have passed and the defendant failed to respond to the notice.

### Causes of Action

7.0    **Breach of contract.**  Under the facts alleged above, defendant has breached the policy in question by refusing to pay plaintiffs valid claims under the policy in question for which Perfit Vision sues.

7.1    **Violation of the Texas Prompt Payment of Claims Act (TPPCA) (Ins. Code Chapter 542).**  Under the facts alleged above the defendant has violated the following provisions of the TPPCA:

§ 542.056.  Notice of Acceptance or Rejection of Claim

   (a) Except as provided by Subsection (b) or (d), an insurer shall notify a claimant in writing of the acceptance or rejection of a claim not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss. …

   (c) If the insurer rejects the claim, the notice required by Subsection (a) or (b) must state the reasons for the rejection.

(d) If the insurer is unable to accept or reject the claim within the period specified by Subsection (a) or (b), the insurer, within that same period, shall notify the claimant of the reasons that the insurer needs additional time. The insurer shall accept or reject the claim not later than the 45th day after the date the insurer notifies a claimant under this subsection.

§ 542.058.  Delay in Payment of Claim

(a) Except as otherwise provided, if an insurer, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delays payment of the claim for a period exceeding the period specified by other applicable statutes or, if other statutes do not specify a period, for more than 60 days, the insurer shall pay damages and other items as provided by Section 542.060.

§ 542.060.  Liability for Violation of Subchapter

(a) If an insurer that is liable for a claim under an insurance policy is not in compliance with this subchapter, the insurer is liable to pay the holder of the policy or the beneficiary making the claim under the policy, in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable attorney's fees.

(b) If a suit is filed, the attorney's fees shall be taxed as part of the costs in the case.

Perfit Vision's claim for the burglary losses due under a policy of insurance is a claim for insurance benefits under the TPPCA.  Defendant wrongfully denied the claim and is liable for the sums due under the policy, the 18% penalty, attorney's fees and costs.

    7.2    **Breach of the Duty of Good Faith and Fair Dealing.**  Under the facts alleged above, the defendant has breached its duty of good faith and fair dealing towards the plaintiff in that the following occurred:

1. There was an insurance contract between the plaintiff insured and the defendant- insurer, which created a duty of good faith and fair dealing;
2. The defendant breached its duty when it
   (1) denied or delayed payment when liability was reasonably clear, or
   (2) canceled an insurance policy without a reasonable basis, and
3. The defendant's breach proximately caused the plaintiff's damages.

As a result of the defendant's violation of its duty of good faith and fair dealing, the plaintiff suffered actual damages for which it sues.

    7.3    **Violations of the Texas Unfair Settlement Practices Act (Ins. Code Chapter 541).**  Under the facts alleged above the defendant has knowingly violated the following

provisions of Chapter 541 Texas Insurance Code:

§ 541.051.  Misrepresentation Regarding Policy or Insurer

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to:

(1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued:

(A) the terms of the policy;

B) the benefits or advantages promised by the policy.

§ 541.060.  Unfair Settlement Practices

(a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:

(1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of: (A) a claim with respect to which the insurer's liability has become reasonably clear;

(3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

(4) failing within a reasonable time to:

(A) affirm or deny coverage of a claim to a policyholder; or

(B) submit a reservation of rights to a policyholder;

(7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim; …

§ 541.061.  Misrepresentation of Insurance Policy

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:

(1) making an untrue statement of material fact;

(2) failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

(4) making a material misstatement of law; or

(5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

7.4    Perfit Vision and Luong's claim for the burglary losses due under a policy of insurance is a claim for insurance benefits under Chapter 541.  Not only did defendant wrongfully deny the claim, but knowingly engaged in unfair settlement practices and misrepresentations, as alleged above, and is liable for the sums due under the policy, actual damages it caused, attorney's fees and costs and, in the case of Luong, mental anguish damages.

7.5    **Violations of Deceptive Trade Practices Act (DTPA).**  Under the facts alleged above the defendant has knowingly and intentionally violated the following provisions of Texas DTPA:

§ 17.46.  Texas Business & Commerce Code:
(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.

(b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(24) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed;

§ 17.50.  Relief for Consumers

(a) A consumer may maintain an action where any of the following constitute a

producing cause of economic damages or damages for mental anguish:

(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:

(A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and

(B) relied on by a consumer to the consumer's detriment;

(3) any unconscionable action or course of action by any person1; or

(4) the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code.

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages…"

7.6    Perfit Vision and Luong were consumers under the DTPA entitled to the benefits of the insurance policy purchased from the defendant.  Not only did defendant wrongfully deny their claim, but knowingly and intentionally violated the DTPA, as alleged above, and is liable for the sums due under the policy, actual damages it caused, attorney's fees and costs and, in the case of Luong, mental anguish damages.

8.0    **Attorney's Fees:**  Plaintiffs made demand upon defendant for payment of the account more than 30 days prior to the filing of this suit and, pursuant to TCPRC §38.001, et. seq., plaintiff is entitled to recover a reasonable amount as attorney's fees.  A reasonable amount of attorney's fee for the plaintiff is at least $2500.00 as of the filing of this lawsuit. Plaintiffs are also entitled for attorneys' fees under their TCCPA, Unfair Settlement Practices and DTPA claims.

9.0    **EXEMPLARY DAMAGES:**       Perfit  Vision  and  Luong  are  entitled  to

exemplary damages against the defendant as a result of its breach of the duty of good faith and fair dealing, for which plaintiffs sue. The plaintiffs are also entitled to treble damages for knowing and intentional violations of Chapter 541 Texas Insurance Code and the DTPA as alleged above and for which plaintiffs sue.

10.0   **PRAYER:**   Plaintiffs ask that defendant be cited to appear and answer and after trial on the merits that the Court grant judgment to plaintiffs as follows:

a. The amount of damages due under the contract of insurance;

b. Actual damages caused by defendant's breach of the duty of good faith and fair dealing, DTPA violations and Chapter 541 Insurance Code violations;

c. The 18% penalty on the contract amount owed for violating the TPPCA;

d. Exemplary damages (breach of duty of good faith and fair dealing);

e. Treble damages for knowing and intentional violations of the DTPA and Chapter 541 Insurance Code;

f. Mental anguish damages for Luong;

g. Attorneys' fees at $300 per hour for prosecuting this case;

h.  Costs of court;

i. Prejudgment interest at 6% as allowed under §302.002 Texas Finance Code;

j. Post-judgment interest at the highest lawful rate

k. Any other relief to which the plaintiff may be entitled.

Respectfully submitted,

LAM, LYN & PHILIP, P.C.
//s//

_____
Carlos Peniche
State Bar No. 15748300
3555 Timmons Lane, Ste 790
Houston, Texas 77027
Phone 713-981-0900
Facsimile:  713-772-7085
Attorney for Plaintiffs
cpeniche@llppc-law.com

**CERTIFICATE OF SERVICE**   I certify this document was served electronically via CM/ECF on all counsel/parties of record who are deemed to have consented to such service under the Court's local rules on April 13, 2015.

_____//s//_____
Carlos A. Peniche