IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PERFIT VISION, EYEWEAR EXPRESS INC. DBA PERFIT VISION & JOHN LUONG, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 4:15-cv-00408 |
| MOUNT VERNON FIRE INSURANCE COMPANY, | § § § | |
| *Defendant*. | § | |

## Defendant's Second Supplement to its Motion for Summary Judgment

Defendant Mount Vernon Fire Insurance Company (Mount Vernon) files its Second Supplement to its Motion for Summary Judgment, reply to Plaintiffs' Response in Opposition to Defendant's First Supplemental Motion for Summary Judgment (Doc. No. 47) and Plaintiffs' First Supplemental Response in Opposition to Defendant's First Supplemental Motion for Summary Judgment (Doc. No. 51), response to Plaintiffs' Objections to Defendant's Summary Judgment Evidence in First Supplemental Motion for Summary Judgment (Doc. No. 48), and objections to and motion to strike Plaintiffs' summary judgment evidence attached to Plaintiffs' Response in Opposition to Defendant's First Supplemental Motion for Summary Judgment (Doc. No. 47).

### A.      Summary

1.      First and foremost, Mount Vernon reemphasizes that this dispute may be disposed—and summary judgment in Mount Vernon's favor is proper—pursuant to the valid, enforceable, and applicable Protective Devices or Services Provisions endorsement. As detailed in Mount Vernon's previous summary judgment filings, the endorsement

excludes coverage for loss caused by burglary if the requisite burglar alarm was not "maintain[ed] . . . in complete working order."[1]  The competent summary judgment evidence establishes that the burglar alarm at the Perfit Vision (Perfit) store was not "maintain[ed] . . . in complete working order"—either because it was not armed (or "turned on") or because it was not functioning properly.[2]  Plaintiffs' attempts to create a fact issue through John Luong's affidavits, which are replete with conclusory, speculative, and otherwise improper statements about matters of which Luong has no personal knowledge, should be disregarded, and the affidavits should be struck.

2.       Further, there is not a shred of evidence that Plaintiffs made the requisite down payment for the policy under which they seek to recover.  Rather, the evidence, including evidence attached to this supplement, demonstrates the opposite.

3.       In addition, the application Luong signed contains false information.  By providing false information in the application, Luong[3] breached the Warranty Statement which appears over his signature.  Pursuant to the plain and express language of the

---

[1] All of the arguments and authorities in, and exhibits attached to, Mount Vernon's prior summary judgment filings at Docket Nos. 23, 27, 28, 40, and 41 are incorporated by reference as if fully set forth in this motion.

[2] *See e.g., Scottsdale Ins. Co. v. Logansport Gaming, L.L.C.*, 556 Fed. Appx. 356, 357-60 (5th Cir. 2014) (unpublished opinion)(holding, after fire suppression system did not activate during fire, insured failed to maintain fire suppression system "in complete working order" as required by protective safeguards endorsement); *Def's Mot. Summ. J.* (Doc. No. 23 at 13-17 and authorities cited holding such protective safeguards provisions exclude coverage for loss when insureds fail to activate, or turn on, such alarms or systems); *see Transcripts from Status Conferences* (Doc. No. 18 at 2:23-3:2, 3:9-15; Doc. No. 19 at 6:13-15, 14:13-16, 15:4-7) (Plaintiffs' counsel acknowledging the alarm was not armed at the time of the burglary); *Aff. of J. Cao* (Doc. No 23-8); *Alarm Activity Records* (Doc. Nos. 23-9, 23-10, 23-11)(documenting alarm was not armed at time of burglary); *Police Report* (Doc. No. 27-1 at Page 7 of 8) (noting Perfit's manager Michael Luong indicated Perfit's personnel discovered burglary Monday morning after the burglary; and, "When they arrived the alarm was not turned on.  Sugar Land dispatch advised that the last alarm that at SLPD received at that business was in November of 2013.  The last employee to leave the business was Lisa Tran who . . . could not remember if she set the alarm.").

[3] The "Applicant's Name" in the application is "Chris Tran and John Luong dba Perfect Vision."  To simplify matters, the applicant will be referred to as Luong in this filing.

Warranty Statement, Luong warranted that the information provided in the application was true and correct and further "acknowledge[d] and agree[d] that a breach of this WARRANTY STATEMENT is grounds for the Company to declare void any policy . . . and/or deny any claim(s) for coverage thereunder." Accordingly, Mount Vernon's denial of Plaintiffs' claim for insurance coverage was also proper for this reason.

### B.   Summary Judgment Evidence

4.   Mount Vernon submits the following supplemental summary judgment evidence in support of this motion:

Exhibit G       Affidavit of Susan DeHart Khan, Sales Producer, Westridge, LLC

Exhibit G-1     Email from Roxana Fuentes of Westridge, LLC to John Luong Regarding Draft of Policy Application

Exhibit G-2     Completed Insurance Policy Application Signed by John Luong

Exhibit G-3     ETI Financial Corporation Premium Finance Agreement Signed by John Luong

Exhibit G-4     Email Dated March 24, 2014 from Braishfield Associates, Inc. to Westridge, LLC Regarding Nonpayment of the Down Payment on the Policy Premium

Exhibit G-5     Email Dated April 28, 2014 Regarding Policy Cancellation Endorsement

Exhibit G-6     Emails Dated April 20 and 21, 2015 Between John Luong and Westridge, LLC

Exhibit G-7     Emails Dated April 24, 2015 Between Plaintiffs' Counsel and Westridge, LLC

Exhibit G-8     Documents Pertaining to Luong and/or Chris Tran's Insurance Claim for a Loss in 2013

Exhibit H       Excerpts from Records Produced by Allstate Insurance Company

3

Exhibit I        Affidavit of Kenneth Alan Ferguson, Assistant Vice President, Commercial Lines Team Leader, Mount Vernon Fire Insurance Company

## C.        Factual Background

### 1.        The Application

5.        In September of 2013, Allstate cancelled the policy on which Chris M. Tran and John Luong were named insureds, noting, "The reason for cancellation is NON-PAYMENT OF PREMIUM." *Allstate Records* [Ex. H at 376-84].  Attached is the Affidavit of Susan DeHart Khan [Ex. G], of Westridge, LLC (Westridge), the retail insurance agency through which Luong secured the Mount Vernon policy.  In the affidavit, DeHart Khan sets forth the following: In February of 2014, Luong contacted Westridge, an Allstate affiliated agency, to obtain an insurance policy for the Perfit retail eyewear stores.  Westridge had purchased the agency from another entity, which was also an exclusive Allstate agency. [Ex. G, paras. 2, 4].  When Luong contacted Westridge in February of 2014, the type of coverage Perfit previously had was no longer available from Allstate. [Ex. G, para. 6].  Accordingly, Westridge obtained permission to shop for the coverage with another carrier. *Id.*  This was the first time Westridge had placed coverage for Mr. Luong. [Ex. G, para. 3].  Westridge worked with Luong to complete the application for the Mount Vernon policy by obtaining the information necessary to complete the application. [Ex. G, paras. 8-11].  The application Luong signed includes the following:

> By signing this application you are warranting that all information on this application is true and correct.
>
> . . . .

4

Has coverage been cancelled or non-renewed in the last 3 years? . . .          ☐ Yes   ☒ No

    If yes, please provide complete details: _____

        . . . .

Loss information for the past 3 years:          ☑ None or provide details below

      . . . .

Has insurance coverage been cancelled or non-renewed in the past 3 years? . . .          ☐ Yes   ☒ No

    . . . .

No General Liability losses/claims incurred in the past 3 years (excluding closed no pay) Note: we can still consider this account with some loss activity in the past 3 years, however this quote would not be valid and we would need to review the details of the claims.  Please advise dates, incurred and reserve amounts and the description of the loss and we will review.          ☑ True   ☐ False

No Property losses/claims incurred in the past 3 years (excluding closed no pay)          ☑ True   ☐ False

    . . . .

**Fraud Statement:** Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and may subject such person to criminal and/or civil penalties and other sanctions.

**Applicant's Warranty Statement:** I warrant that the information provided in this Application, and any amendments or modifications to this Application are true and correct.  I acknowledge that the information provided in this Application is material to acceptance of the risk and the issuance of the requested policy by Company.  I agree that any claim, incident, occurrence, event or material change in the Applicant's operation taking place between the date this application was signed and the effective date of the insurance policy applied for which would render inaccurate, untrue or incomplete, any

5

information provided in this Application, will immediately be reported in writing to the Company and the Company may withdraw or modify any outstanding quotations and/or void any authorization or agreement to bind the insurance.  Company may, but is not required, to make investigation of the information provided in this Application.  A decision by the Company not to make or to limit such investigation does not constitute a waiver or estoppel of Company's rights.

I acknowledge that this Application is deemed incorporated by reference in any policy issued by Company in reliance thereon whether or not the Application is attached to the policy.

**I acknowledge and agree that a breach of this WARRANTY STATEMENT is grounds for Company to declare void any policy or policies issued in reliance thereon and/or deny any claim(s) for coverage thereunder.**

[Exs. D-1 (Doc. No. 40-2); G, paras. 8-11; G-2].[4]

6. Westridge then sent the entire completed application to Luong to review for accuracy. [Ex. G, paras. 10-11].  Luong signed the application and returned it to Westridge. [Exs. G, para. 11; G-2; D-1 (Doc. No. 40-2)].  Westridge submitted the application to surplus lines agent and wholesale broker Braishfield Associates, Inc. (Braishfield), and Braishfield submitted the policy to Mount Vernon. [Exs. A (Doc. No. 23-2), paras. 5-14; G, paras. 6-7].

---

[4]  In addition, and as previously noted, the policy's Common Policy Conditions include the following provision:

    **C.  Concealment, Misrepresentation Or Fraud**

       This policy is void in any case of fraud by you as it relates to this policy at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

    **1.**  This policy;

    **2.**  The Covered Property;

    **3.**  Your interest in the Covered Property; or

    **4.**  A claim under this policy.

[Ex. A-1 (Doc. No. 23-3)].

**2.      Mount Vernon's Reliance on the Application**

7.      As reflected in the attached affidavit from Kenneth Alan Ferguson, Assistant Vice President, Commercial Lines Team Leader [Ex. I], Mount Vernon relied on the information and warranties in the application in determining whether to issue an insurance policy and the scope of coverage the policy provided. *Aff. of Kenneth Alan Ferguson* [Ex. I, paras. 4-15].  The warranties regarding prior losses and claims and prior cancellation or non-renewal of coverage were material to the policy Mount Vernon issued. *Id.*  In fact, the language from the application quoted above twice refers to a policy (or policies) issued by Mount Vernon "in reliance" on the application and expressly states that Luong "acknowledge[s] that the information provided in this Application is material to acceptance of the risk and the issuance of the requested policy by [Mount Vernon]." [Exs. D-1 (Doc. No. 40-2); D-2 (Doc. No. 40-3); G-2].  Further, as noted in the application and in Ferguson's affidavit, Luong "acknowledge[d] that this Application is deemed incorporated" in the Mount Vernon policy "whether or not the Application is attached to the policy." *Id.*; [Ex. I, para. 16].

**3.      False Information in the Application**

8.      Contrary the aforementioned warranty in the application Luong signed, had Luong made an insurance claim to Allstate for another burglary loss, which occurred at the Perfit store in Sugar Land in 2011. [Exs. E (Doc. No. 40-4); H at 172-234].  Luong also made yet another insurance claim to Allstate for water damage at one of the Perfit Vision stores in 2013. [Exs. G, para. 26; H at 235-371].  Further, and contrary to the warranties in the application, the Allstate policy was cancelled for "NON-PAYMENT OF PREMIUM" in

September of 2013, about five months before Luong submitted the application for the Mount Vernon policy. [Exs. A-1; H at 376-84].

9.     Had Mount Vernon known of the losses in the three years preceding the application, Mount Vernon would not have issued the policy as written. [Ex. I].   More specifically, if Mount Vernon had been aware of the prior theft loss in 2011, Mount Vernon would not have issued the policy with coverage for theft. *Id.*   Consequently, the Mount Vernon policy would have provided no coverage for the March 2014 burglary loss at issue in Plaintiffs' suit. *Id.*

**4.     Non-Payment of the Policy Premium**

10.     The affidavit from Westridge's representative further details Plaintiffs' failure to pay the down payment due for the premium on the Mount Vernon policy and the subsequent cancellation of the Mount Vernon policy for non-payment of the premium. [Exs. G, paras. 13-25; G-3; G-4; G-5; G-7].

### D.     Argument and Authorities

**1.     The false information in the application constitutes a breach of warranty.**

11.     Luong breached the warranty that the information in the application was true, and the truth of the information in the application was a condition precedent to coverage under the policy.   In the insurance context, a warranty is a statement by the insured "which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true." *Lane v. Travelers Indem. Co.*, 391 S.W.2d 399, 402 (Tex. 1965) (citation and internal quotation marks omitted).   In general, policy provisions that turn on the truth or falsity of answers in an insurance application are

treated as representations because warranties which result in forfeiture are disfavored under Texas law. *Gouverne v. Care Risk Retention Group, Inc.*, Civ. Action No. 2-07-206, 2008 U.S. Dist. LEXIS 38869, 2008 WL 2065835 at *13 (S.D. Tex. May 13, 2008)(citing *Allied Bankers Life Ins. Co. v. De La Cerda*, 584 S.W.2d 529, 532 (Tex. Civ. App.—Amarillo 1979, writ ref'd n.r.e.)).  However, a policy provision which expressly provides that coverage does not exist unless the applicant's statements are true operates as a warranty or condition precedent. *Gouverne*, 2008 U.S. Dist. LEXIS 38869 at *13 (citing *Riner v. Allstate Life Ins. Co.*, 131 F.3d 530, 536-37 (5th Cir. 1997); *Cartusciello v. Allied Life Ins. Co. of Tex.*, 661 S.W. 2d 285, 288 (Tex. App.—Houston [1st Dist.] 1983, no writ)).  Insurance policies are construed in the insured's favor to avoid exclusion of coverage. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984)(citing *Ramsay v. Md. Am. Gen. Ins. Co.*, 533 S.W.2d 344 (Tex. 1976)).  "That rule does not apply, however, when the term in question is susceptible of only one reasonable construction." *Puckett*, 678 S.W.2d at 938 (citing *Ranger Ins. Co. v. Bowie*, 574 S.W.2d 540 (Tex. 1978)).  Courts look first to the language of the contract itself, and "[w]hen there is no ambiguity, it is the court's duty to give the words used their plain meaning". *Salazar v. State Farm Lloyds*, Civ. Action No. H-13-1904, 2014 U.S. Dist. LEXIS 85893, 2014 WL 2862760 at *8 (S.D. Tex. June 24, 2014)(citing *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1260 (5th Cir. 1997)).

12.    The application could not state any more clearly and unambiguously that Luong warranted as a condition of coverage that the statements he provided in the application were true and correct. [Exs. D-1 (Doc. No. 40-2); D-2 (Doc. No. 40-3); G-2]. Luong warranted that the information provided in the application was not only "true and

correct," but also was "material to acceptance of the risk and the issuance of the requested policy." *Id.* Luong further warranted that any policy issued was issued "in reliance" on the application. *Id.* More importantly, John Luong "**acknowledge[d] and agree[d] that a breach of this WARRANTY STATEMENT is grounds for Company to . . . declare void any policy or policies issued in reliance thereon and/or deny any claim(s) for coverage thereunder.**" *Id.* (emphasis in original). Indeed, Mount Vernon relied on Luong's material representations in the application in issuing the policy. *Id.*; [Ex. I, paras. 4-15]. If Luong's application truthfully reflected the burglary loss in 2011, Mount Vernon would have not issued a policy with coverage for theft, and there would have been no coverage for the 2014 burglary at issue in this suit. *Id.* In addition, by signing the application, Luong acknowledged, "this Application is deemed to be incorporated by reference in any policy issued by Company in reliance thereon whether or not the Application is attached to the policy." *Id.*; *see also* Ex. I, para. 16]. In other words, the application is a part of the Mount Vernon policy. In addition, the plain and unambiguous terms of the Concealment, Misrepresentation Or Fraud clause of the policy's Common Policy Conditions provide that the policy is "void if you or any other insured, at any time, intentionally conceal or misrepresent [such] a material fact . . . ." [Ex. A-1 (Doc. No. 23-3)]. This clause further unambiguously provides: "This policy is void in any case of fraud by you as it relates to this policy at any time." *Id.*

13.     Mount Vernon thus included warranty language in the application and policy and conditioned coverage on the truthfulness of the information in the application. *Cf. Gouverne*, 2008 U.S. LEXIS 38869 at *12-*16 (finding similar language in insurance policy

constituted a warranty, and coverage was conditioned on truthfulness of statements in application)(citing *Lane*, 391 S.W.2d at 402 as "finding no warranty because there was no express declaration in the policy regarding warranties, there was no provision that the policy would only be effective if the statements were true and there was no provision that the policy would be void if the statements were untrue").  Luong breached this warranty because the application contained false information regarding prior losses or claims and cancellation or non-renewal of coverage within the three years preceding the application.  Accordingly, the Mount Vernon policy provides no coverage for the 2014 burglary loss, and Mount Vernon's denial of Plaintiffs' claim was proper.

**2.     Whether Luong reviewed the application before he signed it has no bearing on coverage.**

14.     In addition, Luong's statements in his most recent affidavit (Doc. No. 47-1) that he did not fill out the application and did not review the answers on the application, but signed the application, do not create coverage where none exists.  As the Texas Supreme Court has recognized, "parties to a contract have an obligation to protect themselves by reading what they sign and, absent a showing of fraud, cannot excuse themselves from the consequences of failing to meet that obligation." *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 233 (Tex. 2008) (orig. proceeding) (per curiam).  Further, an insured is charged with knowledge of the provisions of an insurance policy and is deemed to know the contents of the contract the insured makes. *See, e.g., Howard v. Burlington Ins. Co.*, 347 S.W.3d 783, 792 (Tex. App.—Dallas 2011, no pet.); *Jeffries v. Pat A. Madison, Inc.*, 269 S.W.3d 689, 692 (Tex. App.—Eastland 2008, no pet.); *E.R. Dupuis Concrete Co. v. Penn Mut. Life Ins. Co.*, 137 S.W.3d

311, 317 (Tex. App.—Beaumont 2004, no pet.); *Pankow v. Colonial Life Ins. Co. of Tex.*, 932 S.W.2d 271, 277 (Tex. App.—Amarillo 1996, writ denied); *Shindler v. Mid-Continent Life Ins. Co.*, 768 S.W.2d 331, 334 (Tex. App.—Houston [14th Dist.] 1989, no writ); *Standard Accident Ins. Co. v. Employers Cas. Co.*, 419 S.W.2d 429, 432 (Tex. Civ. App.—Dallas 1967, writ ref'd n.r.e.); *see also Lyon*, 257 S.W.3d at 232 ("[a] party who signs a document is presumed to know its contents" including "documents specifically incorporated by reference").   Luong's position is further undermined by the affidavit from Westridge's representative, DeHart Khan, who notes pivotal facts Luong has omitted from his affidavit, including the fact that DeHart Khan completed the application with Luong over the phone and with information Luong provided and Westridge sent the entire application for Luong to review for accuracy and then sign. [Ex. G at paras. 3, 4, 8-11].  In sum, Luong's most recent affidavit, like his previous one, does not create coverage or a genuine issue of material fact sufficient to defeat summary judgment in Mount Vernon's favor.

3.     **The analysis on which Plaintiffs base their response is inapplicable to Luong's warranty, which he breached.**

15.     Plaintiffs mischaracterize the Warranty Statement and the information in the application as representations rather than a warranty and thereby apply the incorrect analysis. In their response, Plaintiffs cite section 705.004 of the Texas Insurance Code, which provides:

(a) An insurance policy provision that states that false statements made in the application for the policy or in the policy make the policy void or voidable:
  (1) has no effect; and
  (2) is not a defense in a suit brought on the policy.
(b) Subsection (a) does not apply if it is shown at trial that the matter misrepresented:
  (1) was material to the risk; or

> > (2) contributed to the contingency or event on which the policy became
> > due and payable.
> (c) It is a question of fact whether a misrepresentation made in the application
> for the policy or in the policy itself was material to the risk or contributed
> to the contingency or event on which the policy became due and payable.

TEX. INS. CODE § 705.004; (Doc. No. 47 at 2).  Plaintiffs then note that under Texas law, an insurer may avoid liability on a "life insurance policy", unlike the Mount Vernon commercial property and liability policy, due to a misrepresentation by the insured. (Doc. No. 47 at 2)(citing *Mayes v. Mass Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex. 1980)). Plaintiffs next cite authority which provides that an insurer must establish the following five elements to establish a misrepresentation defense and avoid or rescind an insurance contract: (1) a representation by the insured; (2) falsity of the representation; (3) reliance thereon by the insurer; (4) the intent to deceive by the insured; and (5) materiality of the representation. *Id.*; *see also Chubb Life Ins. Co. v. Stanley*, No. A14-91-01360-CV, 1992 Tex. App. LEXIS 2743, 1992 WL 289345 at *5 (Tex. App.—Houston [14th Dist.] Oct. 15, 1992)(unpublished opinion)("As set out by the Texas Supreme Court in *Mayes*, appellant is entitled to a contract recision only if it is able to meet its burden of proof on five prima facie elements.")(citing *Mayes*, 608 S.W.2d at 616).

16.     As previously addressed, the Warranty Statement in the application is not a mere representation, but a warranty that the information in the application is true, and coverage is conditioned on the truthfulness of the information in the application. [Exs. D-1 (Doc. No. 40-2); D-2 (Doc. No. 40-3); G-2]; *see, e.g., Gouverne*, 2008 U.S. Dist. LEXIS 38869 at *12-*16 (citing *Riner*, 131 F.3d at 536-37; *Puckett*, 678 S.W.2d at 938; *Lane*, 391 S.W.2d at 402; *De La Cerda*, 584 S.W.2d at 532).  The evidence establishes that Luong breached this

warranty by submitting an application with false information. [Exs. D-1 (Doc. No. 40-2); D-2 (Doc. No. 40-3); E (Doc. No. 40-4); F (Doc. No. 40-5); G, paras 3, 4, 8-11, 26, 27; G-2; G-8; H at 172-234; 235-371].   Luong therefore breached the warranty, and the condition precedent to coverage was not satisfied. *See, e.g., Gouverne*, 2008 U.S. Dist. LEXIS 38869 at *12-*16 (citing *Riner*, 131 F.3d at 536-37; *Puckett*, 678 S.W.2d at 938; *Lane*, 391 S.W.2d at 402; *De La Cerda*, 584 S.W.2d at 532); *see also Hinna v. Blue Cross Blue Shield of Tex.*, No. 4: 06-CV-810-A, 2007 U.S. Dist. LEXIS 78235, 2007 WL 3086025 at *15-*17 (N.D. Tex. Oct. 22, 2007) (differentiating between representations and warranties in insurance context).   Because Luong breached the warranty, Mount Vernon was entitled to deny the claim for the 2014 burglary.  [Exs. D-1 (Doc. No. 40-2); D-2 (Doc. No. 40-3); G-2].

17.    In addition, Mount Vernon does not necessarily, or solely, seek to avoid or rescind the policy, but offers Luong's breach of the Warranty Statement as yet another reason Mount Vernon was entitled to deny coverage for the 2014 burglary claim.  The five-factor misrepresentation defense analysis is therefore inapplicable. *See Stanley*, 1992 Tex. App. LEXIS 2743 at *5 (citing *Mayes*, 608 S.W.2d at 616).

18.    Further, even if the misrepresentation analysis applies, the five elements are satisfied in this case.  Regarding the first element, by signing the application as the owner of the businesses listed in the application, Luong warranted, and at the very least represented, that there had been no losses or no insurance claims and no cancellation or non-renewal of insurance coverage in the three years preceding the application. *Id.*; [Ex. I].  Regarding the second element, this information was false. [Exs. D-1 (Doc. No. 40-2); D-2 (Doc. No. 40-3); E (Doc. No. 40-4); F (Doc. No. 40-5); G, paras 3, 4, 8-11, 26, 27; G-2; G-8; H at 172-234; 235-371].

14

19.     With regard to the third and fifth elements—reliance and materiality—Mount Vernon relied on the information in the application in issuing the policy and would not have issued the policy as written had Luong submitted a truthful application. [Ex. I, paras. 4-15]. The application twice refers to any policy issued by Mount Vernon "in reliance" on the application and further provides that Luong "acknowledge[s] that the information provided in this Application is material to acceptance of the risk and the issuance of the requested policy" by Mount Vernon. [Exs. D-1 (Doc. No. 40-2); D-2 (Doc. No. 40-3); G-2]. Additionally, in his affidavit, Ferguson addresses Mount Vernon's underwriting process and notes that Mount Vernon relied on the information in Luong's application, including the information falsely indicating that there had been no claims or losses and coverage had not been cancelled or non-renewed in the three years preceding the application. [Ex. I, paras 4-15]. Ferguson's affidavit also establishes that this information was material to the policy and to the scope of coverage. *Id.*  Ferguson further notes that if the application reflected the truth—that there was a burglary loss and claim in 2011—then Mount Vernon may have issued a policy, but would have excluded coverage for theft. [Ex. I, paras. 10, 13].  Accordingly, there would have been no coverage for the 2014 loss at issue in this suit. *Id.*  Thus, Mount Vernon relied on the application in issuing the policy, and the information in the application was material to the risk insured and the policy issued.

20.     As the federal district court in *Hinna* observed:

Section 705.004 of the Texas Insurance Code provides that an insurance policy provision stating that false statements made in the application for the policy render the policy void or voidable will only be effective as a defense in suit brought on the policy when "the matter represented: (1) was material to the

> risk; or (2) contributed to the contingency or event on which the policy became
> due and payable." Tex. Ins. Code. Ann. § 705.004(b) . . . .
>
> > . . . .
>
> Materiality to the risk is viewed as of the time of the issuance of the policy, not
> at the time the loss occurred. *Robinson v. Reliable Life Ins. Co.*, 569 S.W.2d 28, 30
> (Tex. 1978). "[T]he principal inquiry in determining materiality is whether the
> insurer would have accepted the risk if the true facts had been disclosed." *Id.* at
> 29. *See also Harrington v. Aetna Cas. & Sur. Co.*, 489 S.W.2d 171, 177-78 (Tex.
> Civ. App.—Waco 1972, writ ref'd n.r.e.) ("[W]e believe the rule to be that the
> misrepresentation is not 'material to the risk,' as that phrase is used in the
> statute, unless it actually induced the insurance company to assume the risk.").
> Because the disjunctive "or" is used in section 705.004(b) of the Texas
> Insurance Code, an insurance policy can be avoided upon a finding that the
> misrepresentation was material to the risk without proof that the condition
> misrepresented contributed to the event that caused the loss. *See Robinson*, 569
> S.W.2d at 28.

*Hinna*, 2007 U.S. Dist. LEXIS 78235 at *18-*19; *see also Bates v. Jackson Nat'l Life Ins. Co.*, 927

F. Supp. 1015, 1020 (S.D. Tex. 1995)(noting affidavit by insurer's vice president of

underwriting stated insurer relied on representations in application in deciding to issue policy

to applicant and would not have issued policy if insurer knew the truth); *Stanley*, 1992 Tex.

App. LEXIS 2743 at *7 (finding underwriter's testimony that if the insured had been honest

in his application, this "'would have been a knock-out factor'", established reliance and

materiality elements as a matter of law).

  21. The summary judgment evidence establishes that Mount Vernon relied on the

application in determining whether to issue the policy and the scope of coverage. [Exs. D-1

(Doc. No. 40-2); D-2 (Doc. No. 40-3); G-2; I].  The summary judgment evidence also

establishes that had Mount Vernon known the truth, Mount Vernon would not have issued

the policy as written and would have excluded coverage for theft.  Accordingly, even if the

five-element misrepresentation analysis applies, the reliance and materiality elements are established. *See Hinna*, 2007 U.S. Dist. LEXIS 78235 at \*18-\*19.

22.     With regard to the fourth element, intent to deceive can be established as a matter of law, and therefore at the summary judgment stage, contrary to Plaintiffs' contention otherwise.  For example, in the *Hinna* opinion, the court recognized:

> In *Lee v. National Life Assurance Co. of Canada*, 632 F.2d 524 (5th Cir. 1980), the Fifth Circuit stated that the rule of Texas appeared to be that:
>
> > [I]ntent to deceive or induce issuance of an insurance policy can never be proved as a matter of law to establish the misrepresentation defense in the absence of either a warranty that the facts contained in the application are true or evidence of collusion between the applicant and the insurance agent.
>
> *Id.* at 528 (citing *Washington v. Reliable Life Ins. Co.*, 581 S.W.2d 153, 160 (Tex. 1979)). However, the Fifth Circuit subsequently pronounced that this interpretation was incorrect. Based on the intervening case of *Mayes v. Massachusetts Mutual Life Insurance Co.*, 608 S.W.2d 612 (1980), the Fifth Circuit held that "intent to deceive or induce issuance of the policy can, under Texas law, be established as a matter of law regardless of whether there is any evidence of collusion or a warranty by the insured." *Lee v. Nat'l Life Assurance Co. of Canada*, 635 F.2d 516, 517 (5th Cir. 1981).

*Hinna*, 2007 U.S. Dist. LEXIS 78235 at \*10-\*11; *see also Bates*, 927 F. Supp. at 1020 ("On rehearing in *Lee*, the Fifth Circuit modified its prior opinion on the basis of the Texas Supreme Court's decision in *Mayes*, stating that 'the clear implication of the *Mayes* decision is that intent to deceive or induce issuance of the policy can, under Texas law, be established as a matter of law regardless of whether there is any evidence of collusion or a warranty by the insured.'" (quoting *Lee v. Nat'l Life Assurance Co. of Canada*, 632 F.2d 524, 528 (5th Cir. 1981)).

23.     Luong's application includes an express "warranty that the facts contained in the application are true." *See Hinna*, 2007 U.S. Dist. LEXIS 78235 at \*10 (quoting *Lee*, 632

F.2d at 528); [Exs. D-1 (Doc. No. 40-2); D-2 (Doc. No. 40-3); G-2].  Luong's intent to deceive is therefore established as a matter of law. *See id.*

24.     In addition, "[t]he Texas Supreme Court has noted that 'the utterance of a known false statement, made with intent to induce action . . . is equivalent to an intent to deceive.'" *Hinna*, 2007 U.S. Dist. LEXIS 78235 at *13 (quoting *Union Bankers Life Ins. Co. v. Shelton*, 889 S.W.2d 278, 282 n.7 (Tex. 1994)).  When Luong was sent the application to review for accuracy and then signed and submitted the application for the Mount Vernon policy, Luong was aware of the 2011 burglary loss, the 2013 loss, and should have been aware of the cancellation of the prior policy in September of 2013. [Exs. D-1 (Doc. No. 40-2); D-2 (Doc. No. 40-3); E (Doc. No. 40-4); F (Doc. No. 40-5); G, paras 3, 4, 8-11, 26, 27; G-2; G-8; H at 172-234; 235-371]; *Aff. of John Luong* (Doc. No. 47-1 at 2-3).  Nonetheless, Luong signed and submitted the application, which included the the false statements, with the intent to induce Mount Vernon to issue the policy. *See id.*  Thus, for this additional reason, the intent to deceive element is established as a matter of law. *See Hinna*, 2007 U.S. Dist. LEXIS 78235 at *13 (quoting *Shelton*, 889 S.W.2d at 282 n.7).

25.     In sum, the Mount Vernon policy provides no coverage, and Mount Vernon's denial of Plaintiffs' insurance claim was proper because Luong breached the warranty that the information in his application was true, and the truth of the information was a condition precedent to coverage.  Further, even if the five-factor misrepresentation analysis applies as Plaintiffs purport, the five elements are established in this case as a matter of law.  Summary judgment in Mount Vernon's favor is therefore proper for this reason as well as the others addressed in Mount Vernon's prior summary judgment filings.

4.     **Plaintiffs' Objections to Defendant's Summary Judgment Evidence are Moot.**

26.     The exhibits attached to this supplement are in proper, admissible form. Plaintiffs' Objections to Defendant's Summary Judgment Evidence in First Supplemental Motion for Summary Judgment are therefore moot and should be overruled. (Doc. No. 48); [Exs. G, paras. 26-27, 1.1.1.8.; G-8, H at 315-47, 376-84].

5.     **Objections to and Motion to Strike Plaintiffs' Summary Judgment Evidence**

27.     Once again, rather than submitting competent summary judgment evidence, Plaintiffs rely on an affidavit by Luong to support their most recent summary judgment filings. (Doc. No. 47-1).  As with Luong's prior affidavit (Doc No. 25-1), his most recent affidavit is composed of inadmissible, speculative, and conclusory statements and is otherwise incompetent.  His latest affidavit, or at least parts of it, should therefore be struck.

a.     **Applicable Legal Principles**

28.     As a general matter, a district court is entitled to strike summary judgment evidence when the evidence is inadmissible, speculative, conclusory, improperly authenticated, or otherwise incompetent. *See Akin v. Q-L Invs., Inc.*, 959 F.2d 521, 530-31 (5th Cir. 1992); *see also Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-cv-3180, 2010 U.S. Dist. LEXIS 114306, 2010 WL 4366990 at *20-*22 (S.D. Tex. Oct. 27, 2010).   Mere conclusory allegations are not competent summary judgment evidence, and such allegations are therefore insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).   Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Garcia v. Luma Corp., Inc.*, No. 3:02-CV-2426-L, 2004 LEXIS U.S. Dist. 14413 at *13 (N.D. Tex. July 27, 2004).  A district

court may strike any affidavit or any part thereof that does not meet the standards of Federal Rule of Civil Procedure 56(c)(4). *See Akin*, 959 F.2d at 530-31. Thus, a district court may strike an affidavit if it is not based on personal knowledge, if it sets out facts that would not be admissible in evidence, or if it does not show that the affiant is competent to testify on the matters stated. *See* FED. R. CIV. P. 56(c)(4); *see also Interplan*, 2010 U.S. Dist. LEXIS 114306 at *21.

**b.   Affidavit of John Luong Attached to Plaintiffs Response in Opposition to Defendant's First Supplemental Motion for Summary Judgment**

29.     Luong's affidavit, or at least parts of it, should be struck because the affidavit contains speculative, self-serving conclusions unsupported by facts, as well as improper legal conclusions and hearsay. For example, Luong's affidavit contains inadmissible hearsay regarding purported statements by Westridge, Roxanna Fuentes, and Allstate. *Aff of John Luong* (Doc. No. 47-1, paras. 3-6); *see* FED. R. EVID. 801(c), 802; *Eason*, 73 F.3d at 1325. Luong's affidavit also contains statements which are speculative, not based on his personal knowledge, and conclusory, including: "I think I know what happened," followed by what he speculates happened (*Id.*, para. 5), that Westridge, and not its predecessor, was the insurance agent with which Luong dealt during all of the years he has owned the retail eyewear stores (*Id.*, para. 2, 6), "I assumed Westridge . . . ." (*Id.*, para. 6), "I don't know if Westridge . . . ." (*Id.* para. 7), "I am not sure why . . . ." (*Id.*, para. 9) , ". . .so maybe that is why . . . (*Id.*, para. 8), and "I just assumed . . . ." (*Id.*, para 10). *Garcia*, No. 3:02-CV-2426-L, 2004 LEXIS U.S. Dist. 14413 at *13. These statements should therefore be struck. *See Akin*, 959 F.2d at 530-31; *Interplan*, 2010 U.S. Dist. LEXIS 114306 at *20-*22.

### E.   Conclusion

30.    For the reasons addressed above and in Mount Vernon's other summary judgment filings, summary judgment in Mount Vernon's favor is proper.  As a preliminary matter, Plaintiffs "Perfit Vision" and Eyewear Express Inc. DBA Perfit Vision are not parties to the policy and have no standing to sue under the policy.  Their claims should therefore be dismissed.  Moreover, the policy's Protective Devices or Services Provisions endorsement excludes coverage for Plaintiffs' 2014 burglary loss because the competent summary judgment evidence establishes that the burglary alarm system was not "maintain[ed] . . . in completed working order" as a matter of law.  Further, the undisputable evidence consistently establishes that Plaintiffs did not make the requisite premium down payment for the premium on the policy under which they seek to recover.  Finally, Luong breached the warranty that the information in the application was true, and the truth of the information was a condition precedent to coverage.  Further, even if the information in the application is considered representations rather than a warranty, the five elements of a misrepresentation defense are satisfied as a matter of law.  For all of these reasons, the policy provides no coverage for Plaintiffs' loss, Mount Vernon's denial of Plaintiffs' claim for coverage was proper, and summary judgment in Mount Vernon's favor is proper.

### F.   Prayer

Mount Vernon respectfully requests that this Court grant summary judgment in Mount Vernon's favor, deny Plaintiffs' cross-motion for summary judgment, enter final judgment in favor of Mount Vernon, sustain Mount Vernon's objections to Plaintiffs' summary judgment

evidence and strike the improper evidence submitted by Plaintiffs, and grant Mount Vernon

all other and further relief to which it may be justly entitled.

Respectfully submitted,

BINGHAM, MANN & HOUSE

BY: /s/ Debra Bradberry
  LISA G. MANN
   Attorney-In-Charge
   State Bar No. 12929200
   S.D. Tex. No. 6735
  DEBRA BRADBERRY
   Of Counsel
   State Bar No. 24048362
   S.D. Tex. No. 587156
  4500 Yoakum Boulevard
  Houston, TX 77006
  Telephone: (713) 357-9873
  Facsimile: (713) 559-3050
  lmann@bmh-law.com
  dbradberry@bmh-law.com

  ATTORNEYS FOR DEFENDANT
  MOUNT VERNON FIRE
  INSURANCE COMPANY

## Certificate of Service

I hereby certify that a true and correct copy of the foregoing instrument has been served on all counsel of record electronically via CM/ECF for the United States District Court for the Southern District of Texas in accordance with the Federal Rules of Civil Procedure and Local Rule LR5 on August 21, 2015, as follows:

Carlos Peniche
LAM, LYN & PHILIP, P.C.
3555 Timmons Lane  Suite 790
Houston, Texas  77027
*Attorney for Plaintiffs Perfit Vision, Eyewear Express Inc. d/b/a Perfit Vision and John Luong*

/s/ Debra Bradberry
Debra Bradberry